CERTIFIED COPY

In the

# United States Court of Appeals

### For the Seventh Circuit

FILED JUL 2 2002

MICHAEL W. DOBBINS, CLERK
UNITED STATES DISTRICT COURT

DOCKETED
JUL 0 3 2002

No. 01-3054

INTERNATIONAL INSURANCE COMPANY,

*Plaintiff-Appellee,*

v.

CAJA NACIONAL DE AHORRO Y SEGURO,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 6703—John W. Darrah, *Judge.*

---

ARGUED JANUARY 25, 2002—DECIDED JUNE 7, 2002

---

Before MANION, KANNE, and WILLIAMS, *Circuit Judges.*

MANION, *Circuit Judge.* After a default award was entered against defendant Caja Nacional de Ahorro y Seguro ("Caja") in arbitration proceedings, International Insurance Company ("IIC") filed a petition in federal district court seeking to confirm the award. After Caja filed an answer and affirmative defenses, IIC moved for an order requiring Caja to post pre-judgment security. Caja responded that it was immune from posting such security under the Foreign Sovereign Immunities Act ("FSIA"). The district court held that the FSIA did not preclude it from requiring Caja

54

to post pre-judgment security, ordered it to do so, and struck Caja's answer and affirmative defenses. When Caja did not post security or file a new answer, the district court entered a default judgment against it. Caja appeals, and we affirm.

I.

In 1979, plaintiff International Insurance Company, an American insurance company, purchased reinsurance from the defendant, Caja Nacional de Ahorro y Seguro, an insurance and reinsurance company headquartered in Argentina, pursuant to two reinsurance contracts. Caja subsequently failed to pay IIC over $2 million in indemnity obligations, and on April 10, 2000, IIC initiated an arbitration proceeding as required by each contract's arbitration clause. Caja failed to respond to IIC's arbitration demand or to appear at the arbitration proceeding. As a result, on October 17, 2000, the arbitration panel entered a final default award against Caja for approximately $4.7 million.[1] Each contract contained an identical provision, Article XXI, which provided that "judgment may be entered upon the award of the Arbitrators in any court having jurisdiction." Accordingly, on October 27, 2000, IIC filed a petition for confirmation of the arbitration award in federal district court. Caja filed an answer and affirmative defenses in response to IIC's petition.[2] IIC then moved for an order requiring Caja to post pre-judgment security based on the Illinois Insurance Code, which requires unauthorized for-

---

[1] This amount included the indemnity obligations, accumulated interest, arbitration costs and attorneys' fees.

[2] In doing so, Caja did not challenge the district court's subject matter jurisdiction, nor the court's personal jurisdiction over it.

eign companies, before filing any pleadings, to "deposit... cash or securities or ... a bond with good and sufficient sureties ... sufficient to secure the payment of any final judgment which may be rendered...." 215 ILCS 5/123(5). IIC argued that if Caja failed to do so prior to filing its answer, the court should strike its answer.[3] Caja responded that, as an instrumentality of a foreign government, it is not required to post pre-judgment security pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1600 *et seq.*

The district court held that the FSIA did not preclude it from requiring Caja to post pre-judgment security. The court reasoned that under the FSIA a foreign state's immunity is "subject to existing international agreements to which the United States is a party at the time of enactment of this Act." 28 U.S.C. § 1609. The court concluded that Argentina is a party to such an "existing" agreement—the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (known as the "New York Convention" and codified by 9 U.S.C. § 201 *et seq.*). As a result, the court found the FSIA's immunity provisions inapplicable. Specifically, the New York Convention authorizes the courts of each participating country to require other signatory countries to provide "suitable security" upon seeking to set aside or suspend an award rendered within its jurisdiction. *See* 9 U.S.C. § 201, art. VI.[4] The district court further concluded that Caja's affirmative defenses constituted

---

[3] Additionally, IIC asked the court to strike Caja's affirmative defenses because they did not constitute grounds to vacate the arbitration award. *See infra* note 5.

[4] Both the United States and Argentina are signatories to the New York Convention. The United States signed the New York Convention in 1958, later codifying it into law in 1970 at 9 U.S.C. § 201, and Argentina signed it on March 14, 1989, *id.* note 1b.

an application to set aside the arbitral award (a conclusion that is not challenged on appeal) and therefore held that the insurer was not immune from posting pre-judgment security under Illinois law. The district court then ordered Caja to post security in the amount of the default judgment and struck its answer and affirmative defenses.[5] *See International Ins. Co. v. Caja Nacional de Ahorro y Seguro*, No. 00C6703, 2001 WL 322005 (N.D.Ill. Apr. 2, 2001).

Caja did not post security or file a new answer, but instead, on April 23, 2001, appealed the district court's order to this court. IIC moved to dismiss the appeal for lack of appellate jurisdiction,[6] and on July 3, 2001, in an unpublished order, we granted IIC's motion, citing *Matter of Carlson*, 224 F.3d 716, 718 (7th Cir. 2000) (finding that order requiring security, as opposed to denial of security, is not ordinarily immediately appealable). On April 23, 2001, while Caja's appeal was still pending, IIC moved for a default judgment on its petition to confirm the arbitration award since Caja had not posted security and filed a new

---

[5] The court also reviewed IIC's motion to strike Caja's affirmative defenses, and concluded that all but nine of them must be stricken even if Caja filed security and a proper answer because the asserted defenses did not provide a basis to vacate the arbitration award. That conclusion is not before us on appeal, and we express no opinion as to its validity.

[6] IIC moved to dismiss the appeal for lack of appellate jurisdiction on the ground that the district court's order requiring pre-judgment security was an unappealable interlocutory order. Caja claimed that we had jurisdiction over the appeal pursuant to the collateral order doctrine because the district court had denied its claim of sovereign immunity. *See Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*, 877 F.2d 574, 576 n. 2 (7th Cir. 1989) (denial of claim of sovereign immunity is an immediately appealable interlocutory order under the collateral order doctrine).

No. 01-3054 5

answer. Caja objected, arguing that it did not wilfully disobey the court's order to post security, but rather had filed a meritorious timely appeal (and that posting security would render the appeal moot). The district court construed this objection as a request to stay the litigation pending appeal, but since Caja failed to file the proper motion or the necessary supersedeas bond under Fed. R. Civ. P. 62(d),[7] the court denied its request. On July 6, 2001, the district court granted IIC's motion for default judgment and confirmed the arbitration award in the amount of $4,702,428.12. Caja appeals from that final judgment, and we affirm.

## II.

### A. Subject Matter Jurisdiction

Before addressing the merits of this appeal, we must confirm that we have jurisdiction over this case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1988). The Federal Arbitration Act ("FAA"), which governs the "enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts,"

---

[7] Rule 62(d) provides that "[w]hen an appeal is taken the appellant by giving a supersedeas bond may obtain a stay . . . . The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court." We note that we have recently held that a "judgment creditor who pays the judgment pending appeal instead of posting a supersedeas bond . . . is entitled to the return of its money if the decision is reversed, and so the payment does not moot the appeal unless the appellant has relinquished his right to seek repayment if he wins." *Dale M. ex rel. Alice M. v. Board of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*, 237 F.3d 813, 815 (7th Cir. 2001).

*Jain v. De Mere*, 51 F.3d 686, 688 (7th Cir. 1995), and which permits suits to confirm arbitration awards, *see* 9 U.S.C. § 9, does not provide an independent basis for federal question jurisdiction. *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 n. 32 (1983).

The parties maintain, however, that independent federal question jurisdiction exists. In its initial petition for confirmation of the arbitral award, IIC claimed that the district court had jurisdiction pursuant to the Inter-American Convention on International Commercial Arbitration (known popularly as the "Panama Convention"), codified at 9 U.S.C. § 301 *et seq.* The Panama Convention grants United States district courts original jurisdiction over proceedings falling thereunder. *See* 9 U.S.C. § 302 (incorporating 9 U.S.C. § 203). On appeal, in its brief, Caja claims that the district court had jurisdiction under the FSIA, 28 U.S.C. §§ 1602-1611, because it qualifies as a foreign state under the statute. *See* 28 U.S.C. § 1603. IIC, curiously, found Caja's jurisdictional statement to be "complete and correct." In any event, this court is not bound by the parties' representations regarding the source of our jurisdiction, and we have an independent duty to ensure that it exists. *See ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 235 F.3d 360, 363 (7th Cir. 2000).

We conclude that the Panama Convention provides us with independent federal question jurisdiction under 28 U.S.C. § 1331, which grants district courts original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." As previously noted, the Panama Convention was codified into federal law at 9

U.S.C. § 301 *et seq.*[8] An action or proceeding "falling under the [Panama] Convention shall be deemed to arise under the laws and treaties of the United States [and] [t]he district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." *See* 9 U.S.C. § 203 (incorporated by reference into the Panama Convention by 9 U.S.C. § 302).[9] The action brought by IIC against Caja falls within the ambit of the Convention because the suit involves a dispute arising from a commercial arbitration agreement between two businesses domiciled in countries that are signatories to the Convention. *See* 9 U.S.C. § 202 (incorporated by reference into the Panama Convention by 9

---

[8] Both the United States and Argentina are signatories to the Panama Convention. The United States signed the Panama Convention in 1975, later codifying it into law in 1990, and Argentina signed it in 1975. *See* 9 U.S.C. § 301.

[9] As noted, the Panama Convention, under which IIC initially claimed jurisdiction, incorporates the New York Convention's jurisdictional provision. 9 U.S.C. § 302. In cases where countries have signed both the New York Convention and the Panama Convention, the Panama Convention will apply if "a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the Inter-American [or Panama] Convention and are member States of the Organization of American States." 9 U.S.C. § 305(1). Otherwise, the New York Convention is controlling. 9 U.S.C. § 305(2). Since all of the parties to this arbitration are signatories to the Panama Convention, our jurisdiction is under that Convention. For purposes of this appeal, the distinction between the Panama and New York Conventions is not important because, as discussed in more detail below, the relevant provisions (concerning the propriety of pre-judgment security) are substantively identical.

U.S.C. § 302). Therefore, we have federal question jurisdiction.[10]

While Caja does not challenge our subject matter jurisdiction, it does assert that it is an instrumentality of Argentina,[11] thus making it immune from the jurisdiction of American courts under the FSIA. *See* 28 U.S.C. § 1604 (granting foreign states immunity from the jurisdiction of the courts of the United States). However, even if Caja is a foreign instrumentality, we would still have subject matter jurisdiction because the FSIA contains several exceptions under which a foreign state or instrumentality may be subject to such jurisdiction. *See* 27 U.S.C. §§ 1604-1607. *See also Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) (noting that the FSIA is the "sole basis for obtaining jurisdiction over a foreign state in our courts."). These exceptions "allow the court to obtain subject matter jurisdiction over the case and provide the minimum contacts with the United States required by due process before a court can acquire personal jurisdiction." *Alberti v. Empresa Nicaraguense de la Carne*, 705 F.2d 250, 252 (7th Cir. 1983). *See also* 28 U.S.C. § 1330 (A) (conferring on federal courts jurisdiction over suits against foreign states, as defined in the FSIA, as to any claim for relief

---

[10] Even if we did not have federal question jurisdiction under 28 U.S.C. § 1331, because it is undisputed that IIC is an American corporation and that Caja is an Argentinean business entity, we would have diversity jurisdiction over IIC's suit to confirm its arbitration award. *See* 28 U.S.C. § 1332(a)(2) (providing diversity jurisdiction for suits between citizens of a State and citizens or subjects of a foreign state); *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 840 n.1 (7th Cir. 1999).

[11] Under the FSIA, a foreign state includes an agency or instrumentality of a foreign state. *See* 28 U.S.C. § 1603(a).

with respect to which the foreign state is not entitled to immunity).

Section 1605(a)(6)(A) of the FSIA provides that a foreign state or instrumentality is not immune from the jurisdiction of American courts in any proceeding to confirm an arbitral award where that foreign state or instrumentality agreed to submit to arbitration and the arbitration takes place in the United States. Article XX of each of the parties' reinsurance contracts provides that Caja would "submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction...." Article XXI of each contract contained a provision that arbitration would occur in Chicago, Illinois, unless some other location was mutually agreed upon by the parties. By agreeing to a contract designating Chicago, Illinois as the site of arbitration, even if it is a foreign instrumentality, Caja waived its immunity in a proceeding to confirm the arbitral award. *See* § 1605(a)(6)(A): *Employers Ins. of Wausau v. Banco de Seguros del Estado*, 199 F.3d 937, 941 (7th Cir. 1999). Accordingly, we conclude that we have federal question jurisdiction over this case under 28 U.S.C. § 1331, and that, if Caja is considered an instrumentality of a foreign state, we have jurisdiction under 28 U.S.C. § 1330(A).

### B. Imposition of Pre-Judgment Security

#### 1. Foreign instrumentality.

This bring us to the question of whether Caja is entitled to immunity from a pre-judgment security posting requirement under Section 1609 of the FSIA, which provides, in its entirety, that

> Subject to existing international agreements to which the United States is a party at the time of enactment of

this Act the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.[12]

For purposes of this section, a "foreign state" includes a foreign instrumentality. *See* 28 U.S.C. § 1603(a). A foreign instrumentality is defined by the FSIA as an entity which is a separate legal person, which is an organ of a foreign state or a majority of whose shares or other ownership interest is owned by a foreign state, and which is not a citizen of the United States. *See* 28 U.S.C. § 1603(b). The party claiming immunity under this section must establish a *prima facie* case that it is a foreign instrumentality. *See Alberti*, 705 F.2d at 255. If Caja established this prima facie case, the burden going forward "would shift to the plaintiff [i.e., IIC] to produce evidence establishing that the foreign state is not entitled to immunity. The ultimate burden of proving immunity would rest with the foreign state." *Id.* (citation omitted).

Caja attempted to establish that it is a foreign instrumentality by claiming in its answer that it is wholly-owned by Argentina, submitting three documents in support of its assertion. First, it submitted the affidavit of Jorge Moreira, Caja's attorney in the United States, who averred, based on his personal knowledge, that Caja was wholly-owned by the government of Argentina. Next, it submitted the affidavit of Dr. Horacio R. Crespo, an Argentinean attorney for Caja, who stated under oath that Caja was a wholly-owned agency of the government of Argentina. Mr. Crespo's affidavit did not contain a notarization, although

---

[12] While this Section refers to "attachment arrest and execution," it has been interpreted to include pre-judgment security. *See infra* n.13.

the U.S. Vice Consul in Argentina acknowledged that the affidavit had been executed by Mr. Crespo. Finally, Caja submitted a Spanish document and its English translation, dated July 31, 1998, which purportedly indicated that the administration of Caja had been transferred to the government of Argentina.

IIC responds that these affidavits are insufficient to establish a *prima facie* case that Caja is a foreign instrumentality because these affidavits were not properly authenticated by the duly authorized officer or director of Caja. *See, e.g., Moore v. Nat'l Distillers and Chem. Corp.*, 143 F.R.D. 526, 532 n. 6 (S.D.N.Y. 1992) (plaintiff contested status of defendant as a foreign state because no officer or director had filed an affidavit in support of that claim; court agreed that defendant had not submitted "sufficient evidence").

In its analysis, the district court merely assumed *arguendo* that Caja was a foreign instrumentality, and never actually decided the issue. Caja states in its reply brief that one other court has already found it to be a foreign instrumentality, citing *Skandia America Reinsurance Corp. v. Caja Nacional de Ahorro y Seguro*, 1997 WL 278054 (S.D.N.Y. May 23, 1997). Caja misreads the *Skandia* decision, however, because that court specifically stated that it (like the district court in the present case) was only assuming *arguendo*, for purposes of judicial economy, that Caja was a foreign instrumentality. *Id.* at *3.

The affidavits offered by Caja are not adequate to constitute a *prima facie* case that Caja is an instrumentality of Argentina. Sufficient evidence of the validity for a foreign instrumentality should be relatively simple to obtain. For example, an authenticated corporate document demonstrating ownership at the time of suit, or an affidavit of a duly authorized corporate or government officer, should be readily available, especially when an entity's sovereign

immunity is at stake. While we are not limiting what constitutes proof under all circumstances, the naked assertions of Caja's attorneys are clearly insufficient to establish that Caja is wholly-owned by Argentina. *See, e.g., Sesostris, S.A.E. v. Transportes Navales, S.A.*, 727 F.Supp. 737, 743 (D.Mass. 1989) (evidence of Spanish attorney was insufficient to show that entity was a foreign central bank under 28 U.S.C. § 1611(b)(1) where defendant presented no authenticated document showing its ownership interest). *Compare, e.g., O'Connell Machinery Co., Inc. v. M. V. "Americana"*, 734 F.2d 115, 116 (2d Cir. 1984) (where defendant presented affidavit of Italian government officer averring that a majority of the defendant's shares were owned by a company, which was, in turn, under the direct control of the Italian Government, and where the plaintiff did not dispute such ownership, entity deemed to be foreign instrumentality).

Additionally, we note that an affidavit executed outside the United States must include a statement that the affiant has made his declarations "under penalty of perjury under the laws of the United States of America." 28 U.S.C. § 1746. Mr. Crespo's affidavit contained no such declaration. However, even if it had been properly executed, the affidavit only refers to a document that was apparently executed in 1998, and nothing therein indicates that, as of a relevant time, such as the time of this lawsuit in 2000, at least 50% of Caja was owned by the Argentinean government. *See, e.g., Ocasek v. Flintkote Co.*, 796 F.Supp. 362, 365 (N.D.Ill. 1992) (affidavit that, ten years before present action, majority of entity's shares were owned by Quebec was insufficient to demonstrate entity was foreign state at time action was filed). Therefore, we conclude that Caja has not presented sufficient prima facie evidence to establish that it is a foreign instrumentality under the FSIA such that it would be entitled to immunity from posting pre-judgment security.

### 2. Immunity.

Even if Caja were able to establish that it is a foreign instrumentality and is therefore entitled to the protection of the FSIA, we would still affirm the district court's judgment because we conclude that Argentina, and therefore Caja, has waived its immunity under the FSIA. Section 1610(d) of the FSIA provides that

> [t]he property of a foreign state . . . used for a commercial activity in the United States, shall not be immune from attachment prior to the entry of judgment in any action brought in a court of the United States . . . if—(1) the foreign state has explicitly waived its immunity from attachment prior to judgment . . ., and (2) the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction.[13]

IIC argues that Argentina waived immunity on behalf of itself and all of its instrumentalities by adopting both the New York and Panama Conventions. Caja responds that any such waiver must be explicit. We agree with Caja that

---

[13] As noted earlier, see infra n.12, the language of the FSIA, both in Section 1609 and Section 1610(d), refers to attachment arrest, not to pre-judgment security, although it has been interpreted to extend to both. See, e.g., Stephens v. Nat'l Distillers and Chemical Corp., 69 F.3d 1226, 1229-30 (2d Cir. 1996) (concluding that New York's pre-judgment security requirement constituted an "attachment" for purposes of the FSIA). The parties do not raise the issue, and we express no opinion on whether attachment arrest and pre-judgment security are identical for purposes of the FSIA. We merely find that, if Section 1610(d) gives foreign states immunity from posting pre-judgment security, Caja has waived it in this case.

Section 1610(d)(1) provides that waivers thereunder must be explicit. Therefore, we turn to the provisions of both the New York Convention and the Panama Convention to determine whether Argentina and her instrumentalities have explicitly waived their immunity under the FSIA.

The purpose of the New York Convention, and similarly the Panama Convention, is to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520, n.15 (1974). Article VI of the New York Convention states, "[i]f an application for the setting aside or suspension of the award has been made to a competent authority . . . the authority before which the award is sought to be relied upon may, if it considers it proper, . . . on the application of the party claiming enforcement of the award, *order the other party to give suitable security.*" 9 U.S.C. § 201, art. VI (emphasis added). Similarly, Article 6 of the Panama Convention states, "[i]f the competent authority . . . has been requested to annul or suspend the arbitral decision, the authority . . . at the request of the party requesting execution, may also *instruct the other party to provide appropriate guaranties.*" 9 U.S.C. § 301, art. 6 (emphasis added). The emphasized language of these Conventions allowing a court to impose a security requirement is very explicit. Thus the court-ordered pre-judgment deposit of security is clearly appropriate. *Cf., Venus Lines Agency v. CVG Industria Venezolana de Aluminio, C.A.*, 210 F.3d 1309, 1312 (11th Cir. 2000) (simple reference in contract to "attachment" covers both pre-judgment and post-judgment attachment, and therefore

constituted explicit waiver under Section 1610(d)).[14] Because Argentina signed the New York and Panama Conventions, it has waived the immunity protections of the FSIA for their instrumentalies.

In addition to the explicit waiver requirement of Section 1610(d)(1), Section 1610(d)(2) requires that the purpose of attachment be to obtain security, not to obtain jurisdiction. As we have noted, personal jurisdiction over Caja was never an issue before the district court. Additionally, IIC's motion for an order requiring Caja to post pre-judgment security expressly stated that it was seeking to "secure payment of any final judgment that may be rendered." Finally, in light of the stated purpose of the Illinois statute in question that requires security sufficient to secure the payment of final judgment, see 215 ILCS 5/123(5), it is clear that the district court's order complied with the requirement of Section 1610(d)(2).[15]

---

[14] The parties point us to only one other decision directly on point, and the court in that case did not reach this issue, but rather concluded that the New York Convention was an "existing international agreement" under the FSIA. See Skandia, 1997 WL 278054 at *5. Nevertheless, in a footnote, and without further explanation, the Skandia court, after requiring foreign instrumentalities to post pre-judgment security, stated that it "is unlikely that I would find that respondent's invocation of the New York Convention constitutes such an explicit waiver as required by § 1610." Id. at *5, n. 10.

[15] The parties spent almost their entire briefs on an issue that we do not address, save to recount it here. As stated above, the FSIA gives foreign states and their instrumentalities immunity from attachment arrest of their property in the United States. See 28 U.S.C. § 1609. However, the FSIA specifically states that it is "subject to existing international agreements to which the United
(continued...)

### C. District Court's Imposition of Security

Since we have concluded that Caja, even if it is an instrumentality of Argentina, is not immune from posting pre-judgment security, we reach its last argument that the district court had discretion in determining whether to require pre-judgment security and that it failed to exercise that discretion. Caja argues that the district court erred by applying the mandatory Illinois law rather than the discretionary Convention. Both the New York Convention and the Panama Convention clearly indicate that district courts have discretion to impose pre-judgment security as they deem proper. See 9 U.S.C. § 201; 9 U.S.C. § 301. However, under Illinois law it is less clear as to whether courts have such discretion. The statute's language provides that the court shall order the posting of security "in an amount to be fixed by the court sufficient to secure

---

[15] (...continued)
States is a party at the time of enactment of this Act . . . ." *Id.* IIC argued that the New York Convention, which was acceded to by the United States in 1970, was just such an existing agreement. This is the argument which persuaded the district court to rule in IIC's favor. See *Skandia*, 1997 WL 278054 at *4-5 (holding similarly). Caja responded that the New York Convention was not an "agreement" at the time of enactment as to Argentina or her instrumentalities because Argentina did not become a signatory to the agreement until 1989. IIC replied that the plain language of the FSIA only requires that the United States be a party to the agreement at the time of its enactment. In light of our conclusion that, if Caja is a foreign instrumentality, it waived its immunity under Section 1610(d), we need not resolve this question. In any case, nothing in the FSIA indicates that a foreign state may not renounce its immunity by treaty as Argentina clearly chose to do by adopting the Panama Convention in 1975 and the New York Convention in 1989.

No. 01-3054                                                                17

the payment of any final judgment...." 215 ILCS 5/123(5). While we have found no published Illinois cases interpreting this statute, its plain language arguably gives courts discretion in fashioning a suitable security. However, Caja argues that the district court did not believe it had discretion based on its statement, "Accordingly, pursuant to the New York Convention, defendant is not immune from the posting requirement of the Illinois Insurance Law." We need not decide whether the New York (or Panama) Convention or Illinois law applies because we conclude that under either law the order of pre-judgment security was appropriate.

First, we find nothing in the district court's opinion that would indicate that the court was unaware of its discretion under either Convention. The district court specifically noted that the New York Convention "*allows* this Court to order a party denying enforcement of an award to 'give *suitable* security'...." (emphasis added).[16] Thus, the district court recognized that it had discretion to award security in this case, and, in determining the appropriate amount, decided to rely upon the standard articulated in the Illinois statute. Second, even if the district court improperly believed that it had no discretion to deny an order of pre-judgment security, remand is not necessary because we believe that under the limited circumstances of this case, pre-judgment security was appropriate. Caja repeatedly failed to appear for any part of the arbitration proceeding. We do not deem it to be an abuse of discretion for a court to require such a party to post security in the full amount of the possible judgment against it given this poor track record. Therefore, we conclude that the district court's order of pre-judgment security was appropriate.

---

[16] As we have noted repeatedly, the Panama Convention contains a similar provision.

### III.

In conclusion, we note that, technically, Caja challenged the district court's July 5, 2001 order granting IIC a default judgment, which we review for an abuse of discretion. *See Swaim v. Moltan Co.*, 73 F.3d 711, 716 (7th Cir. 1996). We have focused on the propriety of the district court's order that Caja must file pre-judgment security. Of course, Caja's failure to do so formed the district court's basis for granting the default judgment. But Caja never squarely addressed whether the default judgment itself was improper. For the reasons summarized above, the district court did not err in requiring Caja to post pre-judgment security. Because Caja has presented no other basis for reversing the district court's order granting the plaintiff a default judgment, we therefore affirm.

A true Copy:

Teste:

*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-97-C-006—6-7-02