# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

INTERNATIONAL INSURANCE COMPANY, )
for itself and as Successor In Interest to )
International Surplus Lines Insurance Company, )
The North River Insurance Company, United )
States Fire Insurance Company and/or Westchester )
Fire Insurance Company, Industrial Indemnity )
Company, United States Fire Insurance Company )
of Canada, Toronto, Ontario, and Herald Insurance )
Company of Canada, Toronto, Ontario, )
                                               )
        Judgment Creditor, )
                                               )
    v. )
                                               )
CAJA NACIONAL DE AHORRO Y SEGURO, )
                                               )
        Judgment Debtor. )

Civil Action No. 00 C 6703

The Honorable John W. Darrah

Magistrate Judge Martin Ashman

**FILED**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT
OCT 0 2 2002

**DOCKETED**
OCT 0 3 2002

## NOTICE OF FILING AND CERTIFICATE OF SERVICE

TO:    **Via U.S. Mail:**
Jorge W. Moreira
The Moreira Law Firm P.C.
130 W. 42nd Street, Suite 501
New York, NY 10036

**Via Messenger:**
Richard M. Clark
Richard J. Rettberg
McKenna, Storer, Rowe, White & Farrug
33 N. LaSalle Street, Suite 1400
Chicago, IL 60602-2610

    PLEASE TAKE NOTICE that on October 2, 2002, the undersigned caused to be filed with the United States District Court for the Northern District of Illinois, Eastern Division, a copy of **International Insurance Company's Response to Caja's Showing of Good Faith and Request for Sanctions.**

    I hereby certify that I caused a copy of this Notice and the aforementioned document to be served upon all counsel on October 2, 2002 as indicated above.

               _____
               One of the Attorneys for International Insurance
               Company

James I. Rubin (Attorney I.D. No. 02413191)
R. Douglass Bond (Attorney I.D. No. 06203843)
Julie C. Rodriguez (Attorney I.D. No. 6271412)
Butler, Rubin, Saltarelli & Boyd
1800 Three First National Plaza
Chicago, Illinois 60602
(312) 444-9660
W:\IIIC\Caja\Litigation\nfcs11-rdb.doc



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

INTERNATIONAL INSURANCE COMPANY, )
for itself and as Successor In Interest to )
International Surplus Lines Insurance Company, )
The North River Insurance Company, United )
States Fire Insurance Company and/or Westchester )
Fire Insurance Company, Industrial Indemnity )
Company, United States Fire Insurance Company )
of Canada, Toronto, Ontario, and Herald Insurance )
Company of Canada, Toronto, Ontario, )
                 )
            Judgment Creditor, )
       v. )
                              )
CAJA NACIONAL DE AHORRO Y SEGURO, )
                              )
            Judgment Debtor. )

Civil Action No. 00 C 6703

The Honorable John W. Darrah

Magistrate Judge Martin Ashman

**FILED**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT
OCT 0 2 2002

**DOCKETED**
OCT 0 3 2002

## INTERNATIONAL INSURANCE COMPANY'S RESPONSE TO
## CAJA'S SHOWING OF GOOD FAITH AND REQUEST FOR SANCTIONS

Judgment Creditor, International Insurance Company ("IIC"), by and through its attorneys

Butler Rubin Saltarelli & Boyd, hereby files this response to the filings made by Judgment

Debtor Caja Nacional de Ahorro y Seguro ("Caja") on September 18, 2002 and September 25,

2002 in response to the Court's directive on August 7, 2002 that Caja make a formal submission

demonstrating that it has made a good faith effort to comply with IIC's citation to discover

assets. Caja's submission fails to demonstrate a good faith effort to provide the basic

information to which IIC is entitled by law to enforce its judgment. (*See* Fed. R. Civ. P. 69 and

735 ILCS § 5/2-1402.; *see also* Transcript of Sep. 19, 2002 Status Hearing, attached as Exhibit 1,

at p. 3.) Caja has been stonewalling IIC ever since the Court entered judgment against it on July

5, 2001. Caja continues to flout this Court's orders, and Caja has failed to produce a single

document or answer a single interrogatory in response to IIC's straightforward discovery

requests. Further, Caja has failed to produce any affidavit from anyone responsible for the run-off of Caja's business to explain its utter failure to cooperate with IIC or to obey this Court. As the Court has stated, "Enough is enough . . . ." (Id. at p. 4.) In the face of Caja's contumacious conduct, IIC requests that the Court enter sanctions against Caja in the amount of $2,000 per day until Caja complies with the citation and the related discovery.

## FACTUAL BACKGROUND

### The Court Confirms the Arbitration Award Against Caja

IIC initiated arbitration against Caja in April 2000 to obtain compensation for Caja's share of incurred losses under two reinsurance treaties. Although Caja received proper notice, Caja failed to appear in the arbitration. The panel entered a default judgment and awarded IIC approximately $4.7 million based on the evidence IIC submitted to the panel. Only after IIC petitioned this Court to confirm the award did Caja elect to initiate its "defense," opting to present to this Court every procedural challenge it could think of, regardless of merit.

On IIC's motion, the Court struck Caja's answer and ordered Caja to post pre-answer security pursuant to the Illinois Insurance Code. Caja failed to do so and, consequently, the Court entered a default judgment confirming the arbitration award on July 5, 2001. The Seventh Circuit affirmed the Court's decision on July 2, 2002. Since the judgment was entered, IIC has persistently sought discovery of Caja's assets to enforce the judgment, but Caja has failed to provide any information regarding any discovery request.

### Caja Stonewalls IIC in Its Efforts To Discover Caja's Assets

In September 2001, IIC served its first citation to discover assets for aid in enforcing its judgment against Caja, pursuant to Fed. R. Civ. P. 69 and 735 ILCS § 5/2-1402. Caja failed to

2

appear at the citation hearing and failed to produce documents responsive to the citation. After the court entered a rule to show cause why Caja should not be held in contempt, Caja filed a motion to quash the citation for technical deficiencies and a separate "Alternative" Response to the Citation to Discover Assets, which submitted excuses for its failure to comply with the citation. This filing came eight weeks after the citation had been served and filed. Ultimately, the Court held that there was a technical deficiency in the citation and quashed it.

IIC filed a second citation to discover assets, which was set for hearing on January 10, 2002. The hearing was inadvertently excluded from the Court's schedule for that date. The clerk reset the hearing for January 22, 2002. On January 10, 2002, IIC's counsel informed Caja's local counsel, Rick Rettberg, that it would consent to conducting the citation via written interrogatory so that Caja's representative would not have to travel to Chicago. Rettberg stated that he would propose this to his client.

Caja failed to appear (other than through counsel) or to provide responsive documents at the January 22, 2002 hearing. Rettberg represented to the Court that, due to the economic situation in Argentina, Caja could not respond at that time. Rettberg requested that the court set another status hearing for approximately forty-five days later. The court set the case for a status hearing on March 12, 2002.

In March 2002, the parties negotiated an agreed order, which the court entered on March 19, 2002. Pursuant to that order, Caja agreed to respond to the document requests contained in the citation by April 26, 2002 and thereafter IIC would serve interrogatories by May 6, 2002 and Caja would answer the interrogatories by June 6, 2002. As had become its pattern, Caja failed to comply even with this agreed order. At the May 8, 2002 status, Caja again requested an

3

extension. The Court granted its request and set the case for a status hearing on June 6, 2002. The Court suspended IIC's obligation to serve interrogatories until after Caja produced its documents.

By the June status date, Caja still had not complied with the Agreed Order. On June 6, 2002, Rettberg represented that Caja's managers had authority to conduct business that month and that they would be responding and producing documents by June 20, 2002. The court entered an order requiring compliance by that date. Although it still did not have Caja's documents, IIC served interrogatories on Caja based on Caja's representation that it would respond by June 20, 2002.

Again Caja failed to comply. At the following status hearing, Caja's local counsel stated that lead counsel, Jorge Moreira would be flying to Argentina in mid July, and he would follow up on the progress of Caja's responses to the discovery at that time. The Court put the matter over for status on August 7, 2002.

At the August 7, 2002 status, Caja's local counsel, Rettberg, still had no responses from Caja and there was no disclosure of the results of Moreira's trip to Argentina. Instead, Rettberg merely requested another extension. At this point, recognizing that there had been "compulsory process" outstanding for some time with little explanation as to the reasons for Caja's delay, the Court ordered Caja to proffer evidence of its good faith effort to comply with the citation and the related discovery requests by August 21, 2002. (*See* Transcript of Aug. 7, 2002 Status Hearing, attached as Exhibit 2, at p.3.)

Caja flouted the Court's order again. Caja did not file its proffer on August 21, 2002 as ordered by the Court. Rather, on the eve of the next status date, September 18, 2002, (three

weeks after the proffer was due), Caja faxed an affidavit of its lead counsel, Moreira, to IIC. (Attached as Exhibit 3.) The affidavit lacked any significant detail, had no testimony from Caja or its managers, and included no supporting documentation. At the hearing the next day, the Court offered Caja the opportunity to revise the affidavit as necessary to ensure that it adequately demonstrated Caja's good faith. (*See* Exh. 1, at pp. 3-4.) The Court stated that in the event Caja's showing was inadequate, it would entertain a motion for sanctions. At the following status hearing on September 25, 2002, Caja submitted a revised Moreira affidavit with four supporting documents. (Attached as Exhibit 4.) The Court set a briefing schedule for a response and any request for sanctions.

## ARGUMENT

### I. THE EVIDENCE CAJA PROFFERED TO THE COURT DOES NOT DEMONSTRATE A GOOD FAITH EFFORT TO COMPLY

As the Court is aware, and as IIC has shown, Caja has violated this Court's orders to comply with the citation to discover assets and the related discovery. Now, Caja "must establish that, acting in good faith, [it] has made 'all reasonable efforts' to comply with the unsatisfied order." *See also Securities & Exchange Comm. v. Custable*, No. 94 C 3755, 1999 WL 92260, *3 (N.D. Ill. Feb. 11, 1999) (quoting *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529). "All reasonable efforts" is to be construed strictly. *Id.* "Even if the efforts [the alleged contemnor] did make were 'substantial,' 'diligent' or 'in good faith,' . . . the fact that he did not make 'all reasonable efforts' establishes that [Caja] did not sufficiently rebut the . . . prima facie showing of contempt." *Id.* (quoting *United States v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984)). Here, Caja has made no effort, let alone a good faith one.

5

**A.** **Caja's first proffer gave no explanation for its continued delay in responding to document requests and interrogatories relating to the Citation to Discover Assets.**

Caja's first proffer, which was made three weeks after the ordered due date, was grossly inadequate. The proffer consisted solely of a cursory affidavit from Caja's lead counsel, Jorge Moreira. The affidavit provided no explanation as to why Caja has not been able to produce even a single document or a single interrogatory answer.

Moreira stated that he forwarded IIC's interrogatories (dated June 10, 2002) to Caja on June 13, 2002. (Exh. 3 ¶ 2.) Moreira stated that he went to Argentina on July 18, and met with representatives of Caja's manager, Instituto Nacional de Reaseguros ("INDER"), and that he later "followed up." (Id.) There was no showing with whom Moreira met or which offices he visited. Further, Moreira did not indicate whether or when he submitted the citation (which included a document request rider) to Caja. IIC properly served the second citation back in December 2001. Moreira made no mention of any attempt to respond to the document requests contained in the citation.

Moreira stated that he spoke with an INDER in-house attorney, Silvia Macchi, on September 17, 2002; Macchi's affidavit was not submitted. (Exh. 3 ¶ 3.) Moreira stated that based on this conversation and previous communications, he learned the following: Caja is in the process of running-off old business (Moreira refers to it as "liquidation"); INDER's personnel have been reduced; and Caja and INDER were to be transferred to the Ministry of the Economy for administrative purposes. (Exh. 3 ¶ 3.) Moreira stated that due to these facts it is "impossible to comply" with IIC's citation and the related discovery requests. (Id.) Moreira failed to explain why the Caja documents could not be reviewed in their current location, considering they had yet

6

to be transferred. Indeed, Mr. Moreira did not explain why he did not review the documents himself when he visited Argentina. Further, Moreira stated that there are two reinsurance people on staff at INDER, yet he failed to identify them, failed to obtain affidavits from either of them, and failed to give an explanation as to why he was not able to get any assistance from them or any of the other 100 employees remaining at INDER/Caja. (Id.)

Moreira referred to the "Economic, Financial and Social circumstances in the country" as a basis for Caja's delay, but failed to submit an affidavit from anyone at Caja attesting to why Caja has produced no documents and no information regarding Caja's assets. Moreira's affidavit created far more questions than it answered. Unfortunately, these problems were not cured by Caja's revised submission the following week.

### B.     Caja's second proffer fails to demonstrate good faith by Caja.

Given the cursory nature of Caja's first proffer, the court offered Caja's counsel the opportunity to file a revised proffer, and Caja's counsel accepted. On September 25, 2002, Caja proffered Moreira's revised affidavit with four supporting documents.[1] (*See* Exh. 4.) Moreira's second affidavit is largely the same except that he gives more detail with regard to his *own* efforts (not Caja's). He states that he did the following: made several phone calls to Caja and/or INDER; submitted several written requests; and traveled to Argentina to meet with Caja and/or INDER.[2] (Exh. 4 ¶ 2.) None of these additional facts goes toward proving a good faith effort by Caja. In fact, the opposite is true. These additional facts demonstrate conclusively that Caja has

---

1 As an initial matter, Moreira states that Caja is "wholly owned" agency of the government of Argentina. As this Court will recall, the Seventh Circuit has ruled that Caja, in this case, failed to demonstrate that it was more than 50% owned by the government of Argentina. *See International Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392, 397-98 (7th Cir. 2002). Moreover, Judge Gottschall has defaulted Caja in a parallel proceeding for its failure to so demonstrate. (*See* Docket Listing for *International Insurance Co. v. Caja Nacional de Ahorro y Seguro*, No. 00 C 2189, attached as Exhibit 5, entries 7/10/02 and 7/22/02, pp. 5-6)

7

acted in bad faith by failing to respond repeatedly to the nearly continuous requests from its own attorney.

Caja also submits four documents in support of Moreira's statement, three regulatory-type documents and an affidavit of Juan Brocca, an INDER attorney. These documents either solidify the evidence of bad-faith conduct by Caja or are irrelevant.

The first document is the untimely affidavit of Juan Brocca, which Moreira states is still accurate despite the fact that it was made almost one year ago. Brocca's affidavit was originally submitted by Caja on October 29, 2001, in support of its response to the Court's rule to show cause why Caja should not be found in contempt for failing to respond to IIC's first citation. As IIC argued in response to Caja's original submission of this affidavit, the affidavit actually suggests bad faith by Caja, not good faith.

Brocca's affidavit contradicts Moreira's assertion that Caja cannot respond because it is in "liquidation" and in the process of being transferred to the Ministry of the Economy.[3] (Exh. 4 ¶¶ 3-4.) Brocca's affidavit indicates that neither Caja's run-off status nor its transfer to the Ministry of the Economy is a new development. He attests that Caja was transferred to the Ministry of the Economy and went into run-off in 1994. (Exh. 4, Brocca Aff. ¶¶ 2, 5.) His affidavit further establishes that INDER has been managing Caja since July 1998. (Exh. 4, Brocca Aff. ¶ 2.) Thus, Caja's claims that these changes are excuses for its lack of responsiveness have no merit.

_____

2 It is unclear from the affidavit whether Moreira's communications were with representatives of Caja or with representatives of INDER.

3 It is our understanding that the Spanish word "liquidacion" does not signify a court-imposed liquidation of assets, but merely signifies that a company is in run-off, i.e., winding up its business and, in the case of insurance/reinsurance companies like Caja, not writing any new business. In any event, Caja has failed to explain anywhere what it means by the term, and it has not provided IIC or the Court with any evidence of a court-imposed

A review of Brocca's affidavit makes it clear that Caja is merely searching for any excuse to avoid responding, even if the excuse has no basis in reality. Brocca attests that Caja has no assets, offices, or employees in the United States, but offers no documentation to support his statements. (Id.) Instead, Brocca goes on to say that he really has no knowledge of Caja's current assets or whether it has any assets of its own or property of any kind. (Exh. 4, Brocca Aff. ¶¶ 3-5.) This obfuscation only reinforces the need for prompt enforcement of the citation.

Brocca complains that it would take a long time and a lot of effort to respond to the citation because the documents are in Spanish. (Exh. 4, Brocca Aff. ¶ 6.) This is nonsensical considering Brocca almost certainly speaks Spanish and English, so there should be little difficulty in reviewing the documents and interviewing the relevant individuals. Brocca's affidavit shows that Caja has not made any effort to review or collect even a minimal number of responsive documents. Brocca essentially states that Caja's managers believe that IIC's citation is too onerous and that Caja and its managers are just too busy to respond to it. (Id.) This hardly amounts to a good faith effort to comply.

Caja seeks to insulate Brocca and INDER from any responsibility for providing responsive information through Brocca's statement that "As it was only assigned to INDER that referenced business, we are not legally qualified to inform about the financial statements of La Caja." (Exh. 4, Brocca Aff. ¶ 3.) This rather vague statement appears to assert that INDER, although the "transferee" of Caja's reinsurance business administration, has no knowledge as to Caja's assets or no authorization to speak about them. This kind of chicanery on the part of judgment debtors is one of the reasons that judgment creditors are allowed discovery rights in

or court-supervised liquidation.

9

supplemental proceedings in the first place. As Caja still exists, as do its documents, it must respond with the requested information and documents, which IIC has every right to obtain.

The remaining three documents submitted in support of Moreira's affidavit are copies of what appear to be regulations. The first merely states that the Ministry of Economy will take charge of Caja and INDER. (*See* Exh. 4, at p. 8.) There is no explanation as to how this impacts Caja's ability to respond to the citation. Indeed, Brocca's affidavit indicates that INDER had been transferred to the Ministry of the Economy as early as March 31, 1992 and Caja had been transferred in 1994. (*See* Exh. 4, Brocca Aff. ¶¶ 1, 5.)

The second document merely states that overseas trips are suspended. (*See* Exh. 4, at p. 11.) This has absolutely no relevance considering IIC has agreed to allow Caja to respond to the citation by written interrogatory rather than by personal appearance.

The third document asserts that certain governmental positions were eliminated. (*See* Exh. 4, at page 14.) Moreira argues that this regulation supposedly terminated "the official authority of all INDER employees" and that they had no authority to sign documents on its behalf. (Exh. 4 ¶5(d).) But an affidavit from Moreira as counsel for Caja hardly establishes the truth of Moreira's claim. Moreover, the claim does nothing to explain Caja's total failure to respond to any aspect of the citation. Moreira states that INDER continued to operate and he even visited their offices. (Id.) He also clearly has been consulting with someone there regarding the litigation. Given these facts, it seems clear that Caja could have responded to the discovery requests, but it chose not to do so. This pattern is not new. Nor has it developed since the economic downturn in Argentina. Caja has engaged in delay since IIC initiated arbitration in April 2000. Even the Seventh Circuit has recognized Caja's dilatory behavior. *See International*

10

*Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392 (7th Cir. 2002) ("Caja repeatedly failed to appear for any part of the arbitration proceeding. We do not deem it to be an abuse of discretion for a court to require such a party to post security in the full amount of the possible judgment against it given this poor track record.").

## II. PER DIEM SANCTIONS SHOULD BE ORDERED TO COMPEL CAJA TO COMPLY WITH THIS COURT'S ORDERS AND THE CITATION TO DISCOVER ASSETS

Supplementary proceedings "to enforce judgments are meant to be swift, cheap, and informal." *See Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993). The citation proceedings against Caja have been anything but "swift" and "cheap" due to Caja's continued recalcitrance. As this Court indicated at the September 19, 2002 status, as a judgment creditor, IIC is entitled to information regarding Caja's assets as a matter of right. (Exh. 1, p. 3.) Caja's delay tactics and attempts to hide its assets have persisted since long before the economic situation in Argentina that Caja now uses as a shield. Caja will continue to defy this Court's orders and evade discovery of its assets unless this Court imposes meaningful sanctions. Given the fact that Caja is located in Argentina, a substantial monetary *per diem* penalty should be imposed in order to show Caja – a large insurance/reinsurance company – that it cannot abuse the judicial process with impunity.

### A. Caja has shown a pattern of dilatory conduct and refusal to comply with court orders.

Caja's litigation strategy is delay. One need only see their history of defaults to recognize that. Caja defaulted in the arbitration confirmed in this case. Caja defaulted in an arbitration later confirmed in the Southern District of New York. *See Skandia Am. Reins. Corp. v. Caja*

11

*Nacional de Ahorro y Seguro,* 1997 WL 278054, at *1 (S.D.N.Y. 1997) (confirming arbitration panel's default judgment against Caja where Caja failed to respond to demand for arbitration). Indeed, Caja defaulted before another judge in this district.

Caja's track record before Judge Gottschall in the Northern District is quite similar to its conduct before this Court. Caja waited seven months to appear in the case. In November 2000, IIC moved to default Caja for its belated appearance and argued that Caja should be required to post security if an answer were to be filed. The court allowed briefing and discovery on the sovereignty issue. Caja failed to respond to any of the discovery requests, including those served in 2001, before the Argentinean financial crisis began. Ultimately, Caja was defaulted by Judge Gottschall for failure to prove sovereign status and failure to post security. (*See* Docket Listing for *International Insurance Co. v. Caja Nacional de Ahorro y Seguro,* No. 00 C 2189, attached as Exhibit 5, entry 7/22/02, p. 6).)

Caja's strategy is suspiciously common among other clients of the Moreira Law Firm. For example, in *Employers Ins. of Wausau v. El Banco de Seguros del Estado,* No. 98-c-0521-c, 2001 WL 1882467 (W.D. Wis. Sep. 13, 2001), the Moreira Law Firm represented an Uruguayan reinsurer, El Banco de Seguros del Estado ("El Banco"). El Banco did not defend in the arbitration Employers Insurance of Wausau ("Wausau") initiated against it and other reinsurers. *Id.* at *2-3. Nor did El Banco participate in the confirmation proceedings in federal court. *Id.* El Banco did not respond at all until three years later when Wausau sought to confirm the arbitration award as to El Banco in federal court after having been unsuccessful in its other recovery efforts against El Banco. *Id.; see also Employers Ins. of Wausau v. Banco De Seguros del Estado,* 199 F.3d 937 (7th Cir. 1999). El Banco filed a series of groundless motions and

12

appeals to undermine the arbitration award and avoid the court's enforcement of the judgment. The plaintiff moved for sanctions based on El Banco's refusal to honor the court's judgment even after all of El Banco's appeals had been exhausted. *Wausau*, 2001 WL 1882467, at *4. The court held that the plaintiff had shown that El Banco had been abusing the judicial process and had defied the court's judgment. The court ordered El Banco to pay all attorney fees and costs incurred in attempting to collect the judgment and gave El Banco a deadline for compliance with the judgment. The court held that if El Banco failed to comply, a *per diem* sanction would be imposed in the amount of $2000 a day. *Id.* at *4. In the face of Caja's continued contumacious conduct and the fact that Caja is located in Argentina, a monetary penalty is the only option for coercing compliance. IIC suggests that, given the similarities between the instant case and *Wausau*, a *per diem* penalty of $2,000 would be appropriate here as well.

### B. This Court can and should levy per diem sanctions against Caja.

A court may impose sanctions for civil contempt to coerce obedience to its orders or to compensate the complainant for losses sustained as a result of the contumacy; where compensation is intended, the sanction may take the form of a fine payable to the complainant. *Connolly v. J.T. Ventures*, 851 F.2d 930, 933-34 (7th Cir. 1988); *see also Cannon v. Loyola University of Chicago*, 676 F. Supp. 823, 828 (N.D. Ill. 1987) ("The primary purpose of sanctions for civil contempt is to coerce the contemner into future compliance with the Court's order and to compensate the complainant for losses sustained for past non-compliance.") (citation omitted). This Court has broad discretion to order a remedy based on the nature of the harm and the probable effect of alternative sanctions. *Id.*

13

Federal Rule 37 and Illinois Supreme Court Rule 277 provide that Caja may be sanctioned for its refusal to comply with the citation and the related discovery. These sanctions include a finding of contempt. *See* Fed. R. Civ. P. 37(b), (d); Ill. Sup. Ct. R. 277(h). *See Equal Employment Opportunity Comm. v. Paragon Restaurant, Inc.*, 95 C 667, 1999 WL 231678, *9 (N.D. Ill. March 26, 1999) (finding judgment debtor in contempt as to citation to discover assets; court awarded attorney fees and costs incurred for contempt motion and imposed per diem sanction until party appeared for citation); *In re Joint Eastern & Southern Dist. Asbestos Lit.*, 830 F. Supp. 1153, 1155-56 (C.D. Ill. 1993) (finding civil contempt and ordering imprisonment where party refused to comply with citation to discover assets and party had repeatedly refused to pay court-imposed fines). *See also Shatkin Investment Corp. v. Connelly*, 128 Ill. App.3d 518, 528-29, 470 N.E.2d 1230, 1237-38 (Ill. Ct. App. 1984) (imposing jail term for civil contempt where party failed to respond to citation of assets). Caja's persistent violation of this Court's orders and its refusal to cooperate with the citation demand a finding of civil contempt and imposition of a meaningful sanction.

IIC submits that *per diem* sanctions should be imposed to coerce Caja into complying with the citation. Other courts have levied this type of sanction in similar situations. In *Equal Employment Opportunity Comm. v. Paragon Restaurant, Inc.*, 95 C 667, 1999 WL 231678, *9 (N.D. Ill. March 26, 1999), the district court awarded attorney fees and imposed a per diem sanction in the amount of $100 for each day that the defendant refused to appear or provide materials in accordance with the citation to discover assets. Similarly, in *Wausau, supra*, the court awarded attorney fees and imposed a penalty of $2000 for each day the defendant refused to comply with the judgment. *See also Securities & Exchange Comm. v. Custable*, No. 94 C

14

3755, 1999 WL 92260, *1, 3-4 (N.D. Ill. Feb. 11, 1999) (imposing $1000 civil contempt per diem fine for defendant's failure to pay previously ordered civil penalty for securities violations); *Guess?, Inc. v. Chang*, 912 F. Supp. 372, 378 (N.D. Ill. 1995) (affirming $250 civil contempt fine imposed for each day defendant refused to turn over materials subject to court order); *Retired Chicago Police Ass'n v. City of Chicago*, 1994 WL 201184, *3 (N.D. Ill. May 17, 1994) (ordering escalating per diem fines based on party's refusal to pay previously imposed sanctions); *Cannon v. Loyola University of Chicago*, 676 F. Supp. 823 (N.D. Ill. 1987) (awarding attorney fees and imposing $100 per day civil contempt fine for party's refusal to comply with injunction and citation to discover assets). Only through this type of remedy will Caja be forced to take this judicial process seriously.

WHEREFORE International Insurance Company respectfully requests that this Court reject Caja's proffer of good faith as inadequate and enter sanctions against Caja on a per diem basis, in the amount of $2,000 per day payable to International Insurance Company, until Caja complies with the citation to discover assets and the related interrogatories and document requests. IIC reserves the right to file a surreply, if necessary, on the issue of sanctions.

INTERNATIONAL INSURANCE COMPANY,

By: _____
One of its Attorneys

James I. Rubin (Attorney I.D. No. 02413191)
R. Douglass Bond (Attorney I.D. No. 06203843)
Julie C. Rodriguez (Attorney I.D. No. 06271412)
Butler, Rubin, Saltarelli & Boyd
1800 Three First National Plaza
Chicago, Illinois 60602
(312) 444-9660

15

# SEE CASE
# FILE FOR
# EXHIBITS